UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RASHIA WILSON,

    Petitioner,

v.     Case No: 8:18-cv-013-T-30TBM
Crim. Case No: 8:12-cr-433-T-30TBM
Crim. Case No: 8:12-cr-552-T-30TBM

UNITED STATES OF AMERICA,

    Respondent.

## ORDER

THIS CAUSE comes before the Court on Petitioner Rashia Wilson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Doc. 1)[1], the Government's response in opposition (CV Doc. 6) and Petitioner's reply (CV Doc. 7). Because Petitioner's claims are not cognizable in a § 2255 proceeding, procedurally defaulted, and meritless, the Court concludes Petitioner's Motion must be denied.[2]

---

[1] References to filings in this civil case are cited as "CV Doc. [document number]." References to filings in criminal case number 8:12-cr-433-T-30TBM are cited as "CR 1 Doc. [document number]." References to filings in criminal case number 8:12-cr-552-T-30TBM are cited as "CR 2 Doc. [document number]."

[2] In reaching this conclusion, the Court considered Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (CV Doc. 1), the Government's response (CV Doc. 6), Petitioner's reply (CV Doc. 7), the indictments (CR 1 Doc. 13; CR 2 Doc. 1), the plea agreement (CR 1 Doc. 28; CR 2 Doc. 26), Petitioner's revised presentencing report ("PSR") (CR 1 Doc. 87), and the transcripts of the sentencing proceedings (CR 1 Docs. 68, 104).

## BACKGROUND

In December 2012, Petitioner pleaded guilty to both counts of a two-count indictment charging her as a felon in possession of a firearm, in violation of 18 U.S.C. § 922. (CR 1 Docs. 13, 34, 38).  In April 2013, pursuant to a plea agreement, Petitioner also pleaded guilty to two counts of a 57-count indictment in connection to a tax fraud scheme in which Petitioner participated, specifically: Count Three, wire fraud, in violation of 18 U.S.C. § 1343; and Count Forty-Seven, aggravated identity theft, in violation of 18 U.S.C. § 1028A. (CR 2 Docs. 1, 26, 40).  On June 16, 2013, this Court sentenced Petitioner to serve a total of 252 months' imprisonment for both cases. (CR 1 Doc. 55; CR 2 Doc. 56).  The Eleventh Circuit Court of Appeals vacated this Court's original judgment and remanded for resentencing to correct guideline grouping errors and to recalculate Petitioner's criminal history score. (CR 2 Docs. 89, 94).

On remand, at Petitioner's request, this Court consolidated the cases for resentencing and ordered the United States Probation Office to update the PSR based on the 2014 version of the United States Sentencing Guidelines ("USSG"). (CR 1 Doc. 82; CR 2 Docs. 97, 98).  The probation office applied the relevant grouping rules to all counts of conviction in both cases. (CR 1 Doc. 87 at ¶¶ 49–76).  As to the felon-in-possession and wire fraud counts, it recommended a guidelines range of 188 to 235 months' imprisonment based on a combined total offense level of 34 and a criminal history category of III. (*Id.* ¶¶ 49–76, 78–101, 156).  Petitioner's felon-in-possession counts had a statutory-maximum penalty of ten years in prison, *id.* ¶ 154; *see* 18 U.S.C. § 924(a)(2), and the wire fraud count had a statutory-maximum penalty of twenty years in

prison. (CR 1 Doc. 87 at ¶ 62; *see* 18 U.S.C. § 1343).  As to the aggravated identity theft count, the penalty required by statute was two years in prison, to be served consecutively to the sentences imposed for all other counts. (CR 1 Doc. 87 at ¶¶ 54, 77, 155, 158; *see* 18 U.S.C. § 1028(a)).

This Court again sentenced Petitioner to a total of 252 months' imprisonment. (CR 1 Doc. 104 at 27–28; CR 2 Doc. 110).  The 252 months consisted of 120 months for each felon-in-possession count, to be served concurrently, *id.* at 27, along with 228 months on the wire fraud count, to be served concurrently with the sentence imposed in the gun case.  Petitioner also received 24 months for the aggravated identity theft count, to be served consecutively to the sentences imposed on all other counts. (*Id.* at 27–28).

Petitioner again appealed her judgment and sentence. (CR 1 Doc. 95; CR 2 Doc. 112).  The Eleventh Circuit affirmed her sentences, but vacated the judgment to allow this Court to correct clerical errors. (CR 1 Doc. 109).  The United States Supreme Court denied Petitioner's petition for writ of certiorari. (CR 1 Doc. 112).  Now, Petitioner seeks relief pursuant to 28 U.S.C. § 2255. (CV Doc. 1).

## PETITIONER'S GROUNDS FOR RELIEF

On January 2, 2018, Petitioner timely filed this motion to vacate, set aside, or correct sentence.  In her motion, Petitioner raised the following five grounds, which have been rephrased for clarity:

1. Petitioner's sentence is a violation of the *ex post facto* clause of the United States Constitution because she was sentenced pursuant to the 2012 United States Sentencing Guidelines, rather than the 2008 Guidelines.

3

2. This Court erred in sentencing Petitioner with a two-level offense enhancement for an offense involving three to seven firearms because Petitioner did not illegally possess firearms for purposes of this enhancement.

3. This Court erred in sentencing Petitioner with a four-level leadership enhancement because her offenses involved less than five participants.

4. This Court erred by taking into account Petitioner's prior convictions for determining her criminal history score because Petitioner's prior convictions were *nolle prossed*.

5. This Court erred by adopting the loss calculation proposed in the PSR prepared for resentencing.

## DISCUSSION

The Government contends Petitioner's motion should be denied for three broad reasons: (1) her claims are not cognizable; (2) even if cognizable, she procedurally defaulted her claims; and (3) even if cognizable and not procedurally defaulted, her claims fail on the merits. The Court agrees with the Government and concludes Petitioner's motion must be denied for those reasons.

**I.     Cognizability**

"Under § 2255, the sentencing court is authorized to discharge or resentence a defendant if it concludes that it 'was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting 28

U.S.C. § 2255 (2008)). Nonetheless, section 2255 "does not encompass all claimed errors in conviction and sentencing." *Id.*

When a prisoner, like Petitioner, claims that her sentence is erroneous, such a claim is not cognizable in a § 2255 proceeding because it could have been raised on direct appeal. *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). That said, a petitioner's claim that is not otherwise cognizable in a § 2255 proceeding may be cognizable when "the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* (quoting *Addonizio*, 442 U.S. at 185). Such a miscarriage of justice occurs where a prisoner's sentence is unlawful, or where a prisoner is actually innocent, "or [where] a prior conviction used to enhance [her] sentence has been vacated." *Id.* at 1138–39.

Here, Petitioner claims she suffered an *ex post facto* violation (Ground One); erroneously received a two-level firearms guidelines enhancement and a four-level leadership enhancement (Grounds Two and Three); received an inaccurate criminal history score based on prior arrests that were *nolle prossed* (Ground Four); and erroneously received an eighteen-level offense increase due to a miscalculated financial loss amount (Ground Five). Thus, Petitioner's claims are not those of actual innocence, but of *legal* innocence. So Petitioner may only establish that her alleged sentencing errors resulted in a "complete miscarriage of justice" by proving that her sentence is unlawful.

Where a prisoner's sentence is below the statutory maximum penalty, as is Petitioner's, the sentence is lawful. *Addonizio*, 442 U.S. at 186; *see also Spencer*, 773

5

F.3d at 1140 ("[A]ny miscalculation of the guideline range cannot be a complete miscarriage of justice because the guidelines are advisory"). Here, Petitioner's sentences for each count are below the statutory maximum penalty.[3] So, Petitioner cannot show that her sentence is unlawful such that it resulted in a complete miscarriage of justice. Therefore, Petitioner's arguments are not cognizable in a § 2255 motion.

**II.   Procedural Default**

In addition to Petitioner's claims not being cognizable in a § 2255 proceeding, the Court concludes Petitioner's claims are procedurally defaulted. "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004). Here, Petitioner failed to present her current challenges at sentencing and on direct appeal, even though such challenges were available. *See United States v. Wilson*, 649 Fed. App'x 827 (11th Cir. 2015); *United States v. Wilson*, 593 F. App'x 942 (11th Cir. 2014). So, unless Petitioner establishes either of the exceptions to the procedural default rule, the Court concludes she has procedurally defaulted her current challenges by failing to raise them previously.

There are two exceptions to the procedural default rule. *Lynn*, 365 F.3d at 1234. "Under the first exception, a defendant must show cause for not raising the claim of error

---

[3] This excludes Petitioner's sentence for the aggravated identity theft count, which was not left to this Court's discretion at sentencing as the count carried a mandatory two-year sentence pursuant to 18 U.S.C. § 1028(a).

6

on direct appeal *and* actual prejudice from the alleged error." *Id.* (emphasis in original). "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* at 1234-35 (quoting *Murrary v. Carrier*, 477 U.S. 478, 496 (1986)). Petitioner argues her claim is not defaulted because the first exception applies.

Pursuant to the Supreme Court's analytical framework in *Murray*, Petitioner satisfies the cause prong of the exception "if [she] can show that 'some objective factor external to the defense impeded counsel's errors to comply with the . . . procedural rule,' or that [her] attorney's performance failed to meet the *Strickland* standard for effective assistance of counsel." *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997) (quoting *Murray*, 477 U.S. at 488). Additionally, Petitioner must satisfy the prejudice prong, which requires her to show that the error she alleges "worked to [her] *actual* and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

As cause to excuse her default, Petitioner implies that her attorney rendered ineffective assistance by failing to properly investigate and research applicable case law. So, to satisfy the exception, Petitioner "must demonstrate that the default was caused by [her] attorney's ineffective assistance and actual prejudice resulted." *Reece*, 119 F.3d at 1468.

To establish ineffective assistance of counsel, Petitioner "must first show that 'counsel made errors so serious that counsel was not functioning as the "counsel"

7

guaranteed . . . by the Sixth Amendment.'" *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "If this substantial showing is made, [Petitioner] must then demonstrate that 'the deficient performance prejudiced the defense,' which 'requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

As to the first prong, such a showing of serious errors by her counsel is a high bar for Petitioner to meet, as "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Due to "the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [thus] the [petitioner] must overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Id.* (citations omitted). Nonetheless, to satisfy the first prong, Petitioner "must identify specific acts or omissions of counsel that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance.'" *Brownlee*, 306 F.3d at 1059 (quoting *Strickland*, 466 U.S. at 690).

Here, in her motion, Petitioner implies that her counsel at sentencing rendered ineffective assistance by failing to properly investigate and research applicable case law. Such a claim by Petitioner is insufficient for proving ineffective assistance of counsel for the following reasons.

First, Petitioner attempts to present more specific examples of how her counsel was allegedly ineffective in her reply, but since Petitioner failed to raise these claims initially, the Court concludes Petitioner has abandoned this argument. *See United States v. Magluta*, 418 F.3d 1166, 1185–86 (11th Cir. 2005); *United States v. Dockery*, 401 F.3d 1261, 1262–63 (11th Cir. 2005) (per curiam). Accordingly, Petitioner's mere implication of ineffective counsel, without specific examples of how counsel was allegedly ineffective, is not enough for the Court to conclude that counsel was deficient. So Petitioner cannot satisfy the cause prong of the cause and prejudice exception. Likewise, without specific examples and an affidavit, Petitioner's conclusory allegations do not suffice to satisfy the prejudice requirement. *Whitlow v. United States*, No. 2:09-CR-00488-RDP, 2013 WL 3892992, at *8 (N.D. Ala. May 28, 2013).

Second, Petitioner's claims raised for the first time in her reply are insufficient because the Government did not have an opportunity to respond to Petitioner's reply. And lastly, in her reply, Petitioner cites to *United States v. Myers*, 772 F.3d 213 (5th Cir. 2014) and *Peugh v. United States*, 569 U.S. 530 (2013), in an attempt to prove that her counsel at sentencing was deficient in failing to cite the aforementioned cases as support for Petitioner's claim that she suffered an *ex post facto* violation at sentencing. Nonetheless, as explained in the following section, the cases cited by Petitioner in her reply do not change the fact that her claim is without merit and therefore, even if her counsel at sentencing cited those cases, they would not have changed the outcome. So the Court concludes Petitioner failed to establish that her default was caused by

ineffective assistance of counsel and that actual prejudice resulted. Consequently, Petitioner is not excused from her procedural default.

## III.    Merits

Assuming Petitioner's claims are cognizable and not procedurally defaulted, the Court concludes each of Petitioner's claims fails on the merits for the reasons explained below.

**Ground 1:**    ***Ex post facto* violation**

Petitioner alleges she suffered an *ex post facto* violation when this Court applied the 2012 version of the U.S. Sentencing Guidelines to determine the number of Petitioner's identity theft victims under USSG §2B1.1(b)(2), rather than the 2008 version.[4]  Beginning in the 2009 version, section 2B1.1(b)(2) contained an expanded definition of "victim" that included individuals who incurred actual pecuniary loss, as well as, "any individual whose means of identification was used unlawfully or without authority." *See* USSG §2B1.1, comment. n.4(E).  According to Petitioner, this Court erred by using the 2012 version because she initially began filing false tax claims in April 2009.[5]  Petitioner argues that application of the 2008 definition would have yielded fewer victims and consequently, a lower guideline range.  Petitioner requests her sentence be vacated and remanded for resentencing to address this issue.

---

[4] Petitioner mistakenly uses the 2008 and 2009 versions of the U.S. Sentencing Guidelines interchangeably.

[5] Petitioner's current judgment and sentence is actually based upon the 2014 version, *see* CR 1 Doc. 87 at ¶ 49, and the enhancement she challenges, USSG § 2B1.1(b)(2)(c), was the same in the 2014 version as it was in the 2009 version.  *Compare* USSG § 2B1.1(b)(2)(c) (2009), *with* USSG § 2B1.1(b)(2)(c) (2014).

Petitioner's claim is without merit and this ground must be denied. The *ex post facto* clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). An *ex post facto* violation occurs "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Peugh v. United States*, 569 U.S. 530, 533 (2013). Conversely, where, as here, "[a] defendant . . . is convicted of a conspiracy that began before, but continued after, a Guidelines amendment became effective [they] may be sentenced based on the amendment without triggering any *ex post facto* concerns." *United States v. Aviles*, 518 F.3d 1228, 1230 (11th Cir. 2008); *see also United States v. York*, 428 F.3d 1325, 1337 (11th Cir. 2005) ("[I]f related crimes are committed in a series, the date of the crime at the end of the series governs the date of the Manual to be used.").

Here, the indictment, factual basis supporting Petitioner's plea, and her PSR reflect that the conspiracy began in at least April 2009, and continued until her arrest in September 2012. The fact that some of the acts Petitioner was sentenced for occurred prior to the expansion of the definition of "victim" in section 2B1.1(b)(2) in the 2009 Guidelines is inconsequential. There is no *ex post facto* violation when the last act of the conspiracy for which the Petitioner was convicted occurs after the effective date of the increased guidelines range, even though other acts occurred prior to the effective date. *See Aviles*, 518 F.3d at 1230. Accordingly, the motion is denied as to ground 1.

**Ground 2:    Sentencing error related to offense enhancement**

In this ground, Petitioner argues that this Court improperly increased her offense level when sentencing her for the two counts of being a felon in possession of a firearm. Based on evidence in Petitioner's PSR of Petitioner having possessed three firearms as a felon, this Court sentenced Petitioner with a two-level guidelines enhancement pursuant to USSG §2K2.1(b)(1)(A). The focus of Petitioner's argument is that one of the firearms she pled guilty to possessing "was not illegally possessed for purposes of this enhancement"[6] because "[i]dentification was not requested, *no false information was given*, and the firearm was used for sport."[7]

The Court concludes Petitioner's claim fails because it is refuted by the record and Petitioner provides no factual basis to support her allegations. The offense conduct in Petitioner's PSR establishes that before Petitioner used the firearm in question at a firing range, she "signed rental documents in which she denied being a convicted felon."[8] Thus, Petitioner's argument is baseless as she gave false information when she denied being a convicted felon at the firing range. So the Court concludes Petitioner was correctly sentenced with a two-level enhancement for having possessed three firearms pursuant to USSG §2K2.1(b)(1)(A). Accordingly, the motion is denied as to ground 2.

---

[6] CV Doc. 1 at 5.
[7] *Id.* (emphasis added).
[8] CR 1 Doc. 87 at 10.

**Ground 3:   Sentencing error related to leadership enhancement**

Petitioner's third ground argues that this Court improperly enhanced her sentencing by four levels due to her role in the tax fraud scheme. Specifically, Petitioner claims she should have only received a two-level increase for her role in the aforementioned offenses due to the number of participants in the conspiracy. According to Petitioner, since the scheme was a criminal activity involving less than five participants, her sentence should have been enhanced by two levels, not four.

Contrary to Petitioner's assertion, there are two avenues for her to receive a four-level enhancement due to her role in the scheme. *See* USSG §3B1.1(a). Under avenue 1, such an enhancement is appropriate if Petitioner "was an organizer or leader of a criminal activity that involved five or more participants." *Id.* Alternatively, under avenue 2, such an enhancement is appropriate if Petitioner participated in a criminal activity that was "otherwise extensive." *Id.* While Petitioner argues her sentence cannot have been enhanced based on avenue 1, she does not show either: (a) that the Court relied on that avenue when sentencing her or (b) that she does not qualify for the enhancement under avenue 2. Accordingly, her argument fails.

As to avenue 2, a conspiracy is properly deemed "otherwise extensive" where its participants use "the unknowing services of many outsiders" to carry it out. *See id.* at comment. n.3. And when a court is trying to determine a participant's role in a conspiracy, the following factors are evidence of a leadership role: "the exercise of decision making authority . . . the recruitment of accomplices, the claimed right to a

13

larger share of the fruits of the crime . . . the nature and scope of the illegal activity." USSG § 3B1.1, comment. n.4.

Here, the offense conduct in Petitioner's PSR establishes that Petitioner's tax fraud scheme may properly be considered "otherwise extensive" as the scheme involved approximately 1,475 victims of attempted or actual tax fraud. The offense conduct in Petitioner's PSR also establishes the leadership role Petitioner held in the scheme as Petitioner exercised decision-making authority, recruited others to help carry out the scheme, and claimed a right to a larger share of the profits derived from it. So the Court concludes the enhancement of Petitioner's sentence by four levels was proper because Petitioner was an organizer or leader of an extensive criminal activity; not because of the number of participants as she suggests. Accordingly, the motion is denied as to ground 3.

**Ground 4:    Sentencing error related to criminal history enhancement**

Petitioner argues in Ground 4 that this Court erroneously used her prior convictions to increase her criminal history score, thereby enhancing her sentence. Such an enhancement, according to Petitioner, was erroneous because it was based on prior convictions that were either illegally obtained or *nolle prossed*.

Because of information in Petitioner's PSR, and because Petitioner's claim lacks sufficient detail to be considered, this ground must be denied. As established by Petitioner's PSR, and contrary to her assertion, Petitioner did not receive any Chapter Four guidelines enhancements, nor did her previous *nolle prosequi* arrests count towards her criminal history score. As for Petitioner's claim that her prior convictions that were not *nolle prossed* were illegally obtained to increase her criminal history score, the Court

14

concludes that such a claim lacks sufficient detail to be considered, as Petitioner failed to provide the Court with *any* detail regarding which prior conviction was illegally obtained. Accordingly, as Petitioner does not present "reasonably specific, non-conclusory facts," her claim is insufficient to warrant relief and the motion is denied as to ground 4. *Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (quoting *Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002)).

**Ground 5:    Sentencing error related to loss calculation**

Petitioner argues in her final ground that this Court erred by adopting the loss calculation proposed in the PSR prepared for resentencing. Specifically, Petitioner claims evidence presented in the indictment and PSR shows that the actual loss amount was $96,468 and the intended loss amount was $134,028. So, according to Petitioner, this Court erred by using a loss amount of over $3 million when resentencing her.

Based on the record, the Court concludes Petitioner's claim is without factual support. Petitioner challenged the loss amount at her original sentencing, urging this Court to determine, for the purposes of guidelines calculations, if the loss amount incurred by Petitioner's victims ranged from $2.5 million to $7 million or if it ranged from $7 million to $20 million. This Court determined the intended loss amount to be over $3 million, which reduced Petitioner's total offense level from 36 to 34, and which Petitioner did not challenge on appeal. So the Court finds a lack of any factual support in the record for Petitioner's claim that the maximum loss amount is $134,028. Accordingly, the motion is denied as to ground 5.

## **CONCLUSION**

Petitioner is not entitled to relief on any of the grounds argued in her § 2255 motion. Accordingly, and for the reasons stated above, the Court hereby denies Petitioner's motion.

It is therefore ORDERED AND ADJUDGED that:

1. The Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Doc. 1) is DENIED.

2. All pending motions are denied as moot.

3. The Clerk is directed to close this file.

4. The Clerk is further directed to terminate from pending status the motion to vacate found in CR 1 Doc. 113 and CR 2 Doc. 125.

### **CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)

16

(internal quotation marks omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, she is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida, this 6th day of July, 2018.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record